# IN THE COURT OF APPEALS OF IOWA

No. 20-1219
Filed January 21, 2021

**IN THE INTEREST OF M.T. and A.B.,**
**Minor Children,**

**K.A., Mother,**
　　　Appellant,

**C.B., Father of A.B.,**
　　　Appellant.
_____

　　　Appeal from the Iowa District Court for Black Hawk County, Stephen C. Clarke, Judge.

　　　A mother and father separately appeal the termination of their respective parental rights. **AFFIRMED ON BOTH APPEALS.**

　　　Michelle Jungers of Iowa Legal Aid, Waterloo, for appellant mother.

　　　Jamie L. Schroeder of The Sayer Law Group, P.C., Waterloo, for appellant father.

　　　Thomas J. Miller, Attorney General, and Gretchen Witte Kraemer, Assistant Attorney General, for appellee State.

　　　Andrew Thalacker of Juvenile Public Defender's Office, Waterloo, attorney and guardian ad litem for minor children.

　　　Considered by Bower, C.J., Schumacher, J., and Gamble, S.J.*

　　　*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**GAMBLE, Senior Judge.**

A mother appeals the termination of her parental rights to her children, M.T. and A.B.  A.B.'s father also appeals the termination of his parental rights to A.B.[1]  Both parents challenge the statutory grounds authorizing termination and request additional time to work toward reunification.[2]  The mother also challenges the juvenile court's best-interest determination.  We affirm.

**I. Scope and Standard of Review**

We review termination proceedings de novo.  *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).  "We give weight to the factual determinations of the juvenile court but we are not bound by them.  Grounds for termination must be proven by clear and convincing evidence.  Our primary concern is the best interests of the child[ren]."  *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) (citations omitted).

We use a three-step process to review the termination of a parent's rights.  *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).  First, we determine whether a ground for termination under section 232.116(1) has been established.  *See id.* at 472–73.  If a ground for termination has been established, then we consider "whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights."  *Id.* at 473 (citation omitted).  Then we consider "whether any exceptions in section 232.116(3) apply to preclude termination of

---

[1] The juvenile court also terminated M.T.'s father's parental rights.  He does not appeal.  So our subsequent references to the father refer only to A.B.'s father.
[2] To the extent to mother attempts to challenge the reasonable-efforts mandate, we find her argument not sufficiently developed for our review.  *See In re B.T.*, No. 20-0768, 2020 WL 4812662, at *2 n.2 (Iowa Ct. App. Aug. 19, 2020); *In re K.M.*, No. 19-1637, 2020 WL 110408, at *3 n.6 (Iowa Ct. App. Jan. 9, 2020); *In re O.B.*, No. 18-1971, 2019 WL 1294456, at *2 (Iowa Ct. App. Mar. 20, 2019).

parental rights." *Id.* (quoting *In re M.W.*, 876 N.W.2d 212, 220 (Iowa 2016)). "However, if a parent does not challenge a step in our analysis, we need not address it." *In re J.P.*, No. 19-1633, 2020 WL 110425, at *1 (Iowa Ct. App. Jan. 9, 2020). "Finally, we consider any additional arguments raised by the parents." *K.M.*, 2020 WL 110408, at *1.

## II. Discussion

### A. Statutory Grounds

Both parents challenge the statutory grounds authorizing termination. The juvenile court authorized termination of the mother's rights pursuant to Iowa Code section 232.116(1)(f), (g), and (*l*) (2020). When, as here, the juvenile court terminates on multiple statutory grounds, we may affirm on any ground supported by the record. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). So we focus on section 232.116(1)(f) as to the mother. The court also authorized termination of the father's rights pursuant to section 232.116(1)(f).

Section 232.116(1)(f) authorizes termination when:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Both parents only challenge the fourth element: whether their respective children could safely be returned to their care. Upon de novo review of the record,

we find the children could not be returned to the mother's care and A.B. could not be returned to the father's care.

We first address the mother. The mother struggles with methamphetamine use. She admitted to methamphetamine use about forty-two days prior to the termination hearing. Moreover, the mother has missed all drug testing since March 20, 2020, even though "[s]he has continued to be called twice a week." "We presume these missed drug tests would have resulted in positive tests." *In re I.J.*, No. 20-0036, 2020 WL 1550702, at *2 (Iowa Ct. App. Apr. 1, 2020); *accord In re D.G.*, No. 20-0587, 2020 WL 4499773, at *4 (Iowa Ct. App. Aug. 5, 2020); *In re L.B.*, No. 17-1439, 2017 WL 6027747, at *2 (Iowa Ct. App. Nov. 22, 2017); *In re C.W.*, No. 14-1501, 2014 WL 5865351, at *2 (Iowa Ct. App. Nov. 13, 2014) ("She has missed several drug screens, which are thus presumed 'dirty,' i.e., they would have been positive for illegal substances."). And "[a] parent's methamphetamine use, in itself, creates a dangerous environment for children." *J.P.*, 2020 WL 110425, at *2. Moreover, the mother admitted to consistent marijuana use as a form of pain management and described herself as "stuck" on prescription opioids. And she has not consistently attended substance-abuse treatment in recent months; she missed or cancelled nine of fourteen appointments between April and June. Because we believe the mother's drug use is likely to continue in the future, we conclude the children could not be safely returned to her care. *See In re L.B.*, No. 18-1017, 2018 WL 3650370, at *1 (Iowa Ct. App. Aug. 1, 2018) (collecting cases affirming termination of a parent's parental rights when the parent has a history of unresolved substance abuse).

With respect to the father, he contends A.B. can be returned to his care in Texas, where he shares a house with his boss. But we conclude otherwise. We have concerns about his mental health. He admits he was hospitalized in March 2019 to address his mental health. But he refuses to share any information about his mental health beyond his past attendance at mental-health appointments. So we are left in the dark as to mental-health conditions and needs. And he admits he is not currently engaged in mental-health services. This is concerning because he has made statements to providers that suggest he is untethered to reality. For example, he claimed he owned Google, designed Google's software, and designed the software used by care providers and added in his own notes to his casefile. He also claimed to be a government spy and told a care provider the court system works for him because he owns companies that provide technology to the court system. Nothing in the record suggests there is a factual basis for these assertions.[3]

We also have concerns about the father's temper. A social worker testified it is difficult to communicate with the father because "he usually becomes very angry, will call the worker lots of nasty names, [and] talk about things unrelated to the case." And parents must be able to control their emotions enough to communicate effectively with others regarding their children. *See In re O.N.*, No. 17-0918, 2017 WL 3525324, at *3 (Iowa Ct. App. Aug. 16, 2017) (finding a mother's

---

[3] We recognize the father denied making these assertions at the termination hearing. But the juvenile court made an implicit credibility finding rejecting his denial when it stated in the termination order that the father "has made bizarre representations of his computer and technical abilities." We defer to the juvenile court's credibility findings. *See In re A.M.*, 84 N.W.2d 100, 110 (Iowa 2014) (noting we give weight to the juvenile court's credibility determinations).

inability to control her emotions and anger when interacting with care providers supported termination of her parental rights). Moreover, when the parents were in a relationship, the mother reported incidents where the father subjected her to emotional and physical abuse. Finally, M.T. reported the father "told her she killed her [half] brother" after the parents' youngest child died of sudden infant death syndrome.

Given our concerns about the father's mental health and temper and his lack of mental-health treatment, we conclude A.B. could not be returned to his care. *See In re K.S.*, No. 18-1759, 2018 WL 6705523, at *1–2 (Iowa Ct. App. Dec. 18, 2018) (finding a mother's unaddressed mental-health conditions and inability to regulate her emotions prevented reunification).

So a statutory ground authorizing termination is satisfied as to both parents, and our first step in our analysis is complete. We move to our next step.

**B. Best Interests**

Next, we consider whether termination is in the children's best interests. Only the mother challenges the best-interest determination. So we limit our discussion to whether terminating her rights is in the children's best interests.

In considering the best interests of children, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." *P.L.,* 778 N.W.2d at 40 (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive [children] of permanency after the State has proved a ground for termination under section

232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child[ren]." *Id.* at 41.

The mother notes the children already lost their younger sibling when he died suddenly and argues "termination would cause further grief" because the children would also lose their mother. But a social worker testified the children's bond with the mother is minimal. Conversely, the worker testified the children are "very bonded to the foster parents," who also cared for them during a prior child-in-need-of-assistance (CINA) case. So we do not believe termination will be as difficult for the children as the mother anticipates. These children need and deserve permanency, which can be achieved through termination.

### C. Exceptions to Termination

We complete our three-step analysis by considering if section 232.116(3) should be applied to preclude termination. "[T]he parent resisting termination bears the burden to establish an exception to termination" under section 232.116(3). *A.S.*, 906 N.W.2d at 476. But neither parent argues we should apply any exception to termination, so we will not consider any exceptions.

### D. Additional Time

Finally, we consider the parents' arguments that the juvenile court should have given them additional time to work toward reunification. The juvenile court may defer termination for a period of six months if it is able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child[ren] from the child[ren]'s home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b).

The mother argues she should be given additional time because the COVID-19 pandemic necessarily impacted the services provided and created a unique stressor for her. We disagree. When discussing the impact of the Coronavirus pandemic on parents, we recently said, "Life is unpredictable. Parents must adapt to unplanned situations and overcome unexpected challenges. We will not delay permanency for the children simply because of unexpected changes in services offered to the mother." *In re E.A.*, No. 20-0849, 2020 WL 4498164, at *2 (Iowa Ct. App. Aug. 5, 2020). That mantra holds true on the facts of this case. And like in *E.A.*, we note this case began back in 2018 well before the pandemic impacted services.[4] *See id.* Additionally, the mother also received extensive services through Family Treatment Court since 2018, but she was discharged for non-compliance in 2020. During that time, the mother made little headway toward reunification. "This is not a parent whose hard work placed her on the threshold of reunification only to be thwarted by a once-in-a-lifetime event. This is a parent who was given ample time to gain the skills necessary for reunification but simply failed to progress, pandemic or no pandemic." *Id.* So we do not give the mother additional time to work toward reunification.

For his part, the father argues he is on an upward trajectory and additional time would allow for providers in Texas to complete an Interstate Compact on the Placement of Children (ICPC) study to establish his home is safe. We do not share the father's optimistic view of his trajectory given his lack of mental-health treatment. So even if an ICPC study established the father's physical home (and

---

[4] We also note this case opened just a few months after a prior CINA case closed.

roommate) posed no risk of harm to A.B., we do not believe he would be able to adequately care for A.B. in the near future. So we do not grant him any additional time.

## III. Conclusion

Statutory grounds authorize termination with respect to both parents. Termination of the mother's rights is in the children's best interests. And neither parent should be given additional time to work toward reunification.

**AFFIRMED ON BOTH APPEALS.**